Gary J. Aguirre (SBN 38927)
Aguirre Law, APC
501 W. Broadway, Ste. 800
San Diego, CA 92101
Tel: 619-400-4960
Fax: 619-501-7072
Email: Gary@aguirrelawapc.com

Attorney for Plaintiff Maria A. Pomares

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

MARIA A. POMARES,

    Plaintiff,

v.

UNITED STATES DEPARTMENT OF VETERANS AFFAIRS,

    Defendant.

Case No.: '21CV84  H  MSB

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1. This action is brought under the Freedom of Information Act ("FOIA"). 5 U.S.C. § 552, as amended, for an order compelling Defendant United States Department of Veterans Affairs ("VA") to produce, provide access to, and make available certain records specified below that were requested by Plaintiff Maria Pomares.

## JURISDICTION AND VENUE

2. This Court has jurisdiction and venue over this action pursuant to 5 U.S.C. § 552(a)(4)(B).

## PARTIES

3. Plaintiff is a citizen of the United States and a resident of the County of San Diego.

4. Defendant is an agency of the United States Government and has possession and control of the records that are the subject of this action.

## THE RELEASE OF THE RECORDS SOUGHT
## WOULD SERVE THE HIGHEST PUBLIC INTEREST

5. Plaintiff seeks records from the Department of Veterans Affairs ("VA") relating to the VA's selective release of nonpublic information during the period from January through March 2020 that adversely affected the stock price of Career Education Corporation ("CEC"),[1] a U.S. publicly traded company. During this period, the stock price (ticker symbol: PRDO) fell from $18.83 to $7.96, a loss of 58 percent of its price and over $800 million in market capitalization. By July 2020, the VA had decided it would take no action against CEC,[2] but for many investors who sold during the near

---

[1] The name of the company was changed from Career Education Corporation to Perdoceo Education Corporation effective January 1, 2020. The company's former name is used in this complaint, because the records requests and released records primarily use that name.

[2] Danielle Douglas-Gabriel, *VA Backs down from Plan to Suspend University of Phoenix and Other Colleges from Accessing GI Bill Benefits*, WASH. POST, July 2, 2020, https://www.washingtonpost.com/education/2020/07/02/va-backs-down-plan-suspend-university-phoenix-other-colleges-accessing-gi-bill-benefits/, last visited Jan. 13, 2021.

panic, their losses had already been realized, and for the professional traders, who may have received those tips, their profits had already been banked.

6. Plaintiff is informed and believes, and thereon alleges, that the agency decisions and the release of this nonpublic information involved a relationship between a high-level agency official and an individual in the private sector that should have required the agency official to recuse herself pursuant to agency regulations, which she did not do, and that she should have fully disclosed in her Public Financial Disclosure Report, which she also did not do.

7. The VA took the action at the prompting of a nonprofit organization with prior and current relationships with market participants who may have profited by the price movement of the public company.

8. Plaintiff seeks VA records containing information relating to (i) its decision to make selective releases of nonpublic information, (ii) the identity of those who received the selective releases of the nonpublic information, and (iii) the possible conduits through which this nonpublic information may have flowed to market participants who profited by its use.

9. On January 21, 2020, the nonprofit organization Veterans Education Success ("VES") delivered a letter to Charmain Bogue, Executive Director of the Veterans Benefits Administration ("VBA") Education Service in the VA.[3] The letter, which sought severe penalties against several for-profit educational institutions, began with this salutation, "Dear Charmain." From this first-name greeting, VES proposed that Director Bogue take action to put four schools and a public company out of business in the letter's first sentence: "We are writing to bring information to your attention troubling complaints alleging misleading advertising and enrollment practices by schools, *making*

---

[3] Letter from Aniela Szymanski, VES Sr. Dir. for Legal Affairs & Military Policy to VA Exec. Dir. Charmain Bogue, Veterans Benefits Administration (Jan 21, 2020), https://vetsedsuccess.org/letter-to-va-regarding-gi-bill-feedback-tool-and-38-usc-3696-compliance/, last visited Jan. 15, 2021.

3
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

*those schools ineligible for educational benefits under 38 U.S.C. § 3696* (emphasis added)."[4]

10. VES's letter sought this extraordinary sanction based on evidence it had helped prepare and deliver to the VA: "our staff has gathered evidence that these schools aggressively recruit veterans and other GI Bill beneficiaries, making it especially important that VA take appropriate action to address their behavior."[5]

11. Based on this evidence, VES's letter pushed the VA to choke off the schools' income flow by declaring the schools were ineligible for educational benefits under 38 U.S.C. § 3696.

12. The VES letter also pressed the VA to accept as its own all veterans' purported complaints submitted by VES to the VA regarding for-profit educational institutions and forward all VES generated complaints to law enforcement. To these ends, the VES letter urged the VA to:

  A. Modify its tracking system of veterans' complaints, the GI Bill tool, so it would contain all complaints VES had collected from veterans and submitted to the VA;

  B. Modify its GI Bill tool to reflect student disagreement with the school's response to a VA complaint, similar to the way the U.S. Consumer Financial Protection Bureau reports that information;

  C. Upload all complaints delivered by VESS to the VA "into Consumer Sentinel, which law enforcement relies upon"[6] in its investigations of for-profit schools; and

  D. Explain why the VA had not reported all 1,189 complaints VES had submitted to it.

/ / /

---

[4] *Id.*
[5] *Id.*
[6] *Id.*

4
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

13. On March 9, 2020, at 5:59 p.m., after the stock market had closed, the VA issued a press release announcing it was threatening to do exactly what VES had asked it to do in its January 21, 2020, letter—to choke off the schools' income flow—using similar language to the VES letter and citing the same federal statute.[7]

14. In particular, on March 9, the VA "notified the University of Phoenix [and] Career Education Corporation (Colorado Technical University and American InterContinental University) of the agency's intent to disapprove the enrollment of new GI Bill students at these institutions."[8] In particular, the VA took the following actions:

    A. "The U.S. Department of Veterans Affairs (VA), acting within its required approval authority under the law limiting certain advertising, sales, and enrollment practices, notified the University of Phoenix, Career Education Corporation (Colorado Technical University, American InterContinental University), Bellevue University and Temple University, March 9, of the agency's intent to disapprove the enrollment of new GI Bill students at these institutions."[9]

    B. "After careful review and consideration of findings provided by the Federal Trade Commission and State Attorneys General Offices, VA has concluded there is sufficient evidence to support a finding that these schools have utilized advertising, sales, or enrollment practices that are erroneous, deceptive, or misleading either by actual statement, omission, or intimation against GI Bill beneficiaries, in violation of the law."[10]

/ / /

---

[7] Press Release, VA, VA intends to suspend enrollment of new GI Bill students at University of Phoenix, Career Education Corporation, Bellevue University and Temple University (Mar 9, 2020), https://www.va.gov/opa/pressrel/pressrelease.cfm?id=5399, last visited Jan. 15, 2021.
[8] *Id.*
[9] *Id.*
[10] *Id.*

15. The VA issued its press release almost two hours after the markets had closed, but the press release was not news to those who sold CEC stock short that day.[11] During trading hours on March 9, 2020, the market traded 1.640 million shares of CEC stock, roughly 370 percent of its daily average volume since the beginning of the year. Traders also sold short 512,000 shares, roughly 350 percent of its average daily short sale volume since the beginning of the year. The price of CEC stock fell from $18.83 on January 21, 2020, to $7.96 on March 18, 2020, a fall of 58 percent of its value.

16. The VA gave early notice of its decision to some, including VES. During the trading day at 2:26 p.m. E.T., VES tweeted its own press before the official VA announcement. The VES press release identified CEC and stated the VA had "notified military and veterans service organizations today" of its impending enforcement action.[12]

/ / /
/ / /
/ / /
/ / /

---

[11] The Securities and Exchange Commission provides this concise description of a short sale:
> A short sale is generally the sale of a stock you do not own (or that you will borrow for delivery). Short sellers believe the price of the stock will fall, or are seeking to hedge against potential price volatility in securities that they own.
> If the price of the stock drops, short sellers buy the stock at the lower price and make a profit. If the price of the stock rises, short sellers will incur a loss.
> Short sales must be done in compliance with SEC Regulation SHO.

https://www.sec.gov/investor/pubs/regsho.htm. last visited Jan. 14, 2021.

[12] Press Release, VES, Veterans Education Success Praises Decision by the Department of Veterans Affairs to Suspend New GI Bill Students from Enrolling at the University of Phoenix, Career Education Corporation Institutions, Bellevue University, and Temple University (March 9, 2020), https://vetsedsuccess.org/press-release-veterans-education-success-praises-decision-by-the-department-of-veterans-affairs-to-suspend-new-gi-bill-students-from-enrolling-at-the-university-of-phoenix-career-education-corporati/, last visited Jan. 15, 2021.



17. The VA's selective release of nonpublic information during the trading day shows its lack of understanding how nonpublic information can dramatically move the market. It also suggests the possibility the VA may have released nonpublic information between the arrival of the VES letter on January 21, 2020, and the VA's press release on March 9, 2020. VES also has a history of prior connections with at least one hedge fund that engaged in short selling the stocks of for-profit educational companies.[13]

18. The chart below shows the fall of CEC stock from January 21 to March 18, 2020, is consistent with the VA's selective release of nonpublic information of the impending enforcement proceeding against CEC that found its way to market participants during this period. As the chart illustrates, the price fell from $18.83 to $7.96:

/ / /

---

[13] National Legal and Policy Center, *Are For-Profit College 'Critics' Up to Their Old Tricks?* Nov. 4, 2020, https://nlpc.org/2020/11/04/are-for-profit-college-critics-up-to-their-old-tricks/, last visited Jan. 15, 2021.



19. Barrett Bogue, Director Bogue's husband, is VES Senior Communications Advisor.[14] The full extent of his involvement in VES's effort to persuade the VA to implement VES's January 21 letter is unknown and may never be known, given the nature of his relationship with Director Bogue. He clearly supported VES's efforts to get the VA to crackdown on for-profit schools, as he demonstrated on December 18, 2019, when he tweeted an article focused on how the VA was failing to hold for-profit colleges accountable.[15]

20. Director Bogue's Public Financial Disclosure Report does not disclose her husband's financial relationships with VES. On the form, Director Bogue disclosed her husband is self-employed through a consulting firm, but did not identify the firm or answer questions about the value of his firm and the amount of his income. She merely

---

[14] *See*: https://vetsedsuccess.org/who-we-are/barrett-bogue/, last visited Jan. 15, 2021.
[15] Jasper Craven, *Scrutiny of Colleges that Get Billions in GI Bill Money Remains Mired in Bureaucracy*, THE HECHINGER REPORT, Dec. 11, 2019, https://hechingerreport.org/scrutiny-of-colleges-that-get-billions-in-gi-bill-money-remains-mired-in-bureaucracy/, last visited Jan. 15, 2021.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

disclosed that he is paid a salary and receives an unspecified amount in "consulting fees."[16] The public interest in the release of information and its implications are growing, as a recent series of posts by a national ethics watchdog confirms.[17]

21. Plaintiff is informed and believes and thereon alleges that Director Bogue was obligated to recuse herself under 18 U.S.C. § 208 and 5 C.F.R. 2640.101, but failed to do so. Plaintiff is further informed and believes and thereon alleges, that Defendant VA is withholding records relating to Director Bogue's failure to enforce 18 U.S.C. § 208 and 5 C.F.R. 2640.101.

22. Plaintiff is further informed and believes and thereon alleges, that the VA Office of the Inspector General ("OIG") conducted an investigation of Director Bogue's failure to comply with 18 U.S.C. § 208 and 5 C.F.R. 2640.101 and is wrongfully withholding nonexempt agency records relating to that investigation.

23. On January 15, 2021, Defendant VA's OIG delivered a letter to Plaintiff in which it asserted a "Glomar" response and, on that basis, neither admitted nor denied whether any of the following inquiries of investigative records exist:

1. Any OIG inquiry or investigation or audit where Charmain Bogue was the subject.
2. Any OIG inquiry or investigation or audit where Charmain Bogue a witness.
3. Any OIG inquiry or investigation or audit relating to the handling or material nonpublic information.

/ / /

---

[16] National Legal and Policy Center, *VA Official Charmain Bogue Did Not Disclose Links to Outside Group*, Nov. 12, 2020, https://nlpc.org/2020/11/12/va-official-charmain-bogue-did-not-disclose-links-to-outside-group/, last visited Jan. 15, 2021.

[17] *Id.*, *See* also: *supra*, n. 13 and National Legal and Policy Center, *On Tax Return, Group Did Not Disclose Payments to Husband of VA Official,* Dec. 4, 2020, https://nlpc.org/2020/12/04/on-tax-return-group-did-not-disclose-payments-to-husband-of-va-official/, last visited Jan. 15, 2021.

1  Plaintiff is informed and believes, and thereon alleges, that the records requests that are
2  the subject matter of this complaint also sought records which Defendant VA is
3  withholding on the basis of its "Glomar" response. Defendant VA failed to assert a
4  "Glomar" response in any of its communications with Plaintiff in relation to the records
5  sought by this complaint and therefore waived it.

## FACTS COMMON TO ALL CAUSES OF ACTION

24.     Plaintiff has submitted two FOIA requests to Defendant VA that are the subject of this complaint seeking records relating to the facts alleged in paragraphs 5 through 22.[18] Defendant VA in effect restructured Plaintiff's two FOIA requests into 12 FOIA requests with separate tracking numbers, separate processing by different offices and administrations within the VA, separate appeal processes, and separate dates for exhausting administrative remedies. Plaintiff seeks declaratory and injunctive relief regarding two tracks of the VA's restructured FOIA requests where the administrative remedies have been exhausted. Plaintiff will seek leave of this Court to amend this complaint as necessary to incorporate Plaintiff's claims relating to the other tracks of her FOIA requests as the administrative remedies are exhausted.

## FIRST CAUSE OF ACTION

25.     On November 9, 2020, pursuant to the applicable provisions of FOIA, Plaintiff submitted a letter[19] to Defendant VA requesting access to and copies of specified documents as follows:

1) All emails sent by any of the Designated VA Persons[20] to one or more of the following email addresses between December 15, 2019, and March 15, 2020:
    a. Any email address ending with this domain: @eangus.org;

---

[18] Plaintiff's FOIA requests were submitted on November 9 and 13, 2020. A true and correct copy of said FOIA requests is attached hereto and incorporated herein as Exhibits 1, and 2.
[19] A copy of the request is attached hereto and incorporated herein by reference as Ex. 1.
[20] The term "Designated VA Persons" was defined in the letter to include specific officials and staff with the VA. *Id.*, at 3.

10
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

      b. Any email address ending with this domain: @evocatillc.com;
      c. Any email address ending with this domain: @paaresearch.com;
      d. Any email address ending with this domain: @republicreport.org;
      e. Any email address ending with this domain: @stripes.com;
      f. Any email address ending with this domain: @tcf.org;
      g. Any email address ending with this domain: @veteranseducationsuccess.org;
      h. Any email address ending with this domain: @vetsedsuccess.org; and
      i. Any email address ending with this domain: @washpost.com.

2) All emails received by any of the Designated VA Persons from one or more of the following email addresses between December 15, 2019, and March 15, 2020:
      a. Any email address ending with this domain: @eangus.org;
      b. Any email address ending with this domain: @evocatillc.com;
      c. Any email address ending with this domain: @paaresearch.com;
      d. Any email address ending with this domain: @republicreport.org;
      e. Any email address ending with this domain: @stripes.com;
      f. Any email address ending with this domain: @tcf.org;
      g. Any email address ending with this domain: @veteranseducationsuccess.org;
      h. Any email address ending with this domain: @vetsedsuccess.org; and
      i. Any email address ending with this domain: @washpost.com.

3) All emails sent or received by any of the Designated VA Persons between December 15, 2019, and March 15, 2020, *excluding* VA internal emails, that contain any of the following names in the email address:
      a. Wofford(e.g., Wofford in carrie.wofford@veteranseducationsuccess.org would make this email responsive),
      b. Ang,
      c. Beynon,
      d. Bogue,
      e. Douglas-Gabriel,
      f. Halperin,
      g. Saunders,
      h. Safalow, and
      i. Shireman.

4) All emails sent or received by any of the Designated VA Persons between December 15, 2019, and March 15, 2020, *excluding* VA internal emails, that contain any of the following names anywhere in the email:

       a. Carrie Wofford.
       b. Tanya Ang,
       c. Barrett Bogue,
       d. David Halperin,
       e. Robert Norton,
       f. Michael Saunders,
       g. Bradley Safalow, and
       h. Robert Shireman.

5) All emails sent or received by any of the Designated VA Persons between December 15, 2019, and March 15, 2020, *excluding* VA internal emails, that contain any of the following terms anywhere in the email:
       a. University of Phoenix,
       b. Perdoceo Education,
       c. PRDO,
       d. Career Education,
       e. CECO,
       f. Bellevue University,
       g. Temple University,
       h. Colorado Technical, and
       i. American InterContinental.

6) All emails sent or received by any of the Designated VA Persons between March 8 and March 10, 2020, *including* VA internal emails, that contain any of the following phrases in the subject line:
       a. VA intends to suspend enrollment,
       b. Any Background/TPs on this available?
       c. Talking Points on Suspension Actions,
       d. Suspension Action for Five GI Bill Approved Schools, and
       e. Talking Points on Suspension Action for Five GI Bill Approved Schools.

26. On November 10, 2020, Plaintiff received a letter from the VA acknowledging the receipt of her FOIA request. A true and correct copy of the said acknowledgment letter is attached hereto and incorporated by reference as Exhibit 3. The VA's November 10 letter assigned five different FOIA Tracking numbers to Plaintiff's requests.

27. On November 11, 2020, Plaintiff's counsel contacted the VA FOIA Office offering to clarify any issues relating to the November 9 Plaintiff's FOIA request to facilitate its processing as follows:

> First, the request was drafted so the searches could be conducted electronically. I would estimate the electronic searches could be conducted in an hour or less. That will give you the number of hits.
>
> Second, the requests seek emails with various organizations which are unlikely to be subject to exemptions. In particular, they seek communications with the media and non-governmental organizations.
>
> Third, I would like to discuss any problems you see that could delay the early release of the records sought.

A true and correct copy of this email is attached hereto and incorporated by reference as Exhibit 4.

28. On November 13, 2020, Plaintiff's counsel was contacted by a different FOIA specialist who was "taking the lead" on Plaintiff's November 9 FOIA request, because it had "been assigned to multiple VA FOIA directorates." In this way, the lead FOIA specialist explained, if any of the FOIA officers processing the requests needed clarification, they "will submit their request to me. I have requested they provide me a response by close of business on Monday, November 16, 2020 so that I may send you one request for clarification for the group on Tuesday, November 17, 2020." The lead FOIA specialist further explained that "each FOIA Officer will process the portion of the request pertaining to their directorate and will provide a response directly to you." A true and correct copy of said email is attached hereto and incorporated by reference as Exhibit 5.

29. On November 17, the lead FOIA specialist and Plaintiff's counsel exchanged emails for the purpose of clarifying Plaintiff's FOIA requests. After the requests were clarified to the satisfaction of the lead FOIA specialist, she forwarded the clarifications to the FOIA officers in the different administrations working on Plaintiff's FOIA request. The email also clarified the Veterans Benefits Administration ("VBA") was "processing the request under FOIA tracking numbers 21-00931-F and 21-00956-F." A true and correct copy of this email chain is attached hereto and incorporated herein as Exhibit 6.

/ / /

30. On November 17, 2020, Plaintiff received a letter via email from the VBA, which once again acknowledged receipt of her FOIA request and assigned it tracking number 21-00931-F. A true and correct copy of said letter is attached hereto and incorporated by reference as Exhibit 7.

31. On November 27, 2020, Plaintiff's counsel received an email from the VBA's FOIA specialist extending the response time 20 business days and setting the date for the VBA FOIA Office to issue a response as January 6, 2021. A true and correct copy of said email is attached hereto and incorporated by reference as Exhibit 8 at 30.

32. On November 30, 2020, Plaintiff's counsel responded to the VBA's FOIA specialist November 27 email pointing out the extension failed "to comply with at least two terms of 5 USC § 552(a)(6)(B)." A true and correct copy of said email is attached hereto and incorporated by reference as Exhibit 8 at 29-30.

33. On the same day, November 30, 2020, the VBA FOIA specialist replied reiterating Plaintiff would have a response by January 6, 2021, and offering to discuss with Plaintiff's counsel the extension. A true and correct copy of said email is attached hereto and incorporated by reference as Exhibit 8 at 29.

34. After several email exchanges on November 30, the VBA FOIA specialist and Plaintiff's counsel held a conference call which Plaintiff's counsel confirmed in his email of December 1, 2020, as follows: the VBA FOIA specialist agreed to provide an update on December 2, 2020, regarding (1) when the VBA's Office of Information Technology ("OIT") would provide the search results to the FOIA specialist and (2) how many pages had to be reviewed. A true and correct copy of said email is attached hereto and incorporated by reference as the bottom email in Exhibit 9 at 35-36.

35. On December 2, 2020, the VBA FOIA specialist informed Plaintiff's counsel the OIT was working on the ticket and "it should be resolved in a matter of a few days." A true and correct copy of said email is attached hereto and incorporated by reference as the second email from the bottom in Exhibit 9 at 35.

36. On December 11, 2020, Plaintiff's counsel confirmed with his email the conference call he held the day before with the VBA FOIA specialist. During the conversation, Plaintiff's counsel was informed the FOIA request had been transferred to "tier 3… because it involves upper or senior management, which will delay the release of these records." Plaintiff's counsel stated his position as follows:

> As you know, I disagreed with any extension of time for this request, since it involves an electronic search of records that did not appear to be subject to any exemption. I also understand you have nearly completed your review, so there should be little justification for delay, absent the late decision to transfer this matter to Tier 3.

Plaintiff's counsel requested further information. Specifically:

1. Is there any internal rule or regulation (CFR) that defines, states, or discusses the different tier? For example, what is the guidance for deciding what is tier 2 versus tier 3?
2. Is there any internal rule or regulation (CFR) that expand the period to respond to a FOIA request when the agency transfers a request to a new tier?
3. What is the definition and rule or regulation applied in determining that Ms. Bogue is at a sufficient high level of management within the VBA that this request should now be transferred to Tier 3?

A true and correct copy of this email is attached hereto and incorporated by reference as Exhibit 9, at 34.

37. On December 15, 2020, since the VBA FOIA specialist had not responded, Plaintiff's counsel followed up with an email. On the same date, December 15, the VBA FOIA specialist informed Plaintiff's counsel the request was being reviewed by the Office of General Counsel (OGC). The email continued:

> Once I receive feedback from OGC, I'm hopeful that a disclosure will be made this week. Secondly, I have reviewed your questions below concerning IT processes. I have contacted the Chief of VBACO Desktop Support Services for question #1…. This request is being reviewed by OGC because the subject matter is of interest of senior leadership and, as such, has been designated as

a Substantial Interest (SI) request. Prior to issuing a disclosure determination, OGC must review it before its release.  This is an agency policy.

A true and correct copy of this email is attached hereto and incorporated by reference as Exhibit 9, at 33.

38.     Defendant VA's time for responding to restructured FOIA request 21-00931-F has expired for each of the following reasons:

    A. Defendant VA knew the grounds for its designation of this request as a Substantial Interest request from the date of its receipt of Plaintiff's November 9, 2020, request and thus Defendant VA was dilatory in making said designation;

    B. Defendant VA failed to comply with 38 C.F.R. § 1.556 in its processing of this request; and

    C. All conceivable time periods have expired for Defendant VA to comply with this request under FOIA and 38 § C.F.R. § 1.556.

## SECOND CAUSE OF ACTION

39.     On November 13, 2020, pursuant to the applicable provisions of FOIA, Plaintiff submitted her FOIA request to Defendant VA's (1) FOIA Office, (2) Office of the General Counsel, (3) Veterans Benefits Administration and (4) Office of Information Technology by email and first-class mail. Plaintiff requested access to and copies of specified documents as follows:

1) All FOIA requests received by the VA or any of its Administrations, Offices, and Centers that contain the following name: Charmain Bogue.
2) All FOIA requests received by the VA or any of its Administrations, Offices, and Centers that contain any of the following terms:

    a) University of Phoenix,
    b) Perdoceo,
    c) Bellevue University,
    d) Temple University,
    e) Colorado Technical,

    f) American InterContinental, and
    g) Career Education.
3) All records released in electronic format in response to any of the FOIA requests identified in response to requests 1 and 2 above pursuant to 5 USCS § 552(a)(2)(D)(i).

A true and correct copy of the Plaintiff's FOIA request is attached hereto and incorporated by reference as Exhibit 2.

  40. On November 18, the VA FOIA Service assigned Plaintiff's request to the appropriate offices for processing. Each office assigned a different tracking number to the request, but the letter did not specify what tracking number the OIG had assigned to the FOIA request. A true and correct copy of the November 18, 2020, letter is attached hereto and incorporated by reference as Exhibit 10.

  41. On December 8, 2020, Plaintiff received a letter via email from the VA's Office of the Inspector General ("OIG"). The letter stated the VA OIG had assigned tracking number 21-00078-FOIA to Plaintiff's FOIA request and a search of VA OIG records had yielded no responsive results. The letter also informed Plaintiff of her right to appeal the determination to the OIG's Office of Counselor. A true and correct copy of the VA OIG's letter is attached hereto and incorporated by reference as Exhibit 11.

  42. On December 10, 2020, Plaintiff, through her counsel, appealed the OIG's determination. A true and correct copy of the Plaintiff's appeal is attached hereto and incorporated by reference as Exhibit 12.

  43. On December 17, 2020, the VA OIG responded to Plaintiff's appeal finding "the VA OIG FOIA Office did not conduct an adequate search and" remanded "the FOIA file to that office to conduct a new search" and provide a final response. A true and correct copy of the letter remanding Plaintiff's request to the VA OIG FOIA Office is attached hereto and incorporated by reference as Exhibit 13.

  44. On December 23, 2020, the VA OIG informed Plaintiff it had "conducted another search extending the search period from FY 2014 to" the present which had yielded 11 pages of records released with the letter. The released records were redacted

under Exemption 6. The letter also informed Plaintiff of her right to appeal the determination to the OIG's Office of Counselor. A true and correct copy of the VA OIG's letter is attached hereto and incorporated by reference as Exhibit 14.

45. On December 24, 2020, Plaintiff, though her counsel, appealed the OIG's determination. A true and correct copy of Plaintiff's appeal is attached hereto and incorporated by reference as Exhibit 15.

46. On December 28, 2020, the VA OIG denied the appeal finding the response was proper. The OIG's letter advised Plaintiff of her right to file a complaint with the U.S. District Court. A true and correct copy of the OIG's appeal denial is attached hereto and incorporated by reference as Exhibit 16.

## **PLAINTIFF'S CLAIM FOR RELIEF: VIOLATIONS OF FOIA**

47. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

48. Plaintiff is entitled by law to access the records requested under the FOIA.

49. Defendant VA is in violation of the FOIA, 5 U.S.C. § 552, by failing to fully and lawfully comply with Plaintiff's November 9 and November 13, 2020, requests for records (Exhibits 1 and 2), as specified in paragraphs 25 and 39 above.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court:

A. Declare that Defendant VA has violated the FOIA by failing to satisfy Plaintiff's November 9 and November 13, 2020, requests for records as specified in paragraphs 25 and 39 above;

B. Order Defendant VA to immediately search for and release all records responsive to Plaintiff's November 9 and November 13, 2020, requests for records as specified in paragraphs 25 and 39above;

C. Award Plaintiff her costs and reasonable attorney's fees and litigation costs in this action; and

/ / /

1  D. Grant such other and further relief as the Court may deem just and proper.

DATED: January 15, 2021

_____
Gary J. Aguirre, CA Bar #38927
Aguirre Law, A.P.C.
501 W Broadway, Ste 800
San Diego, CA 92101
Telephone: 619-400-4960
Facsimile: 619-501-7072

Attorney for Plaintiff Maria A. Pomares