1
2
3
4
5
6
7          **UNITED STATES DISTRICT COURT**
8          **SOUTHERN DISTRICT OF CALIFORNIA**
9

| | |
|---|---|
| 10 MARIA A. POMARES, | Case No.: 3:21-cv-00084-H-MSB |
| 11                          Plaintiff, | **ORDER:** |
| 12 v. | |
| 13 UNITED STATES DEPARTMENT OF VETERANS AFFAIRS, | **(1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IN PART;** |
| 14                          Defendant. | |
| 15 | **(2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART; AND** |
| 16 | |
| 17 | |
| 18 | **(3) ORDERING LIMITED SUPPLEMENTAL BRIEFING** |
| 19 | |
| 20 | [Doc. Nos. 59, 62] |

21
22          Before the Court are the parties' cross-motions for summary judgment regarding the
23 production of documents under the Freedom of Information Act ("FOIA") by Defendant
24 United States Department of Veterans Affairs ("the VA"). (Doc. Nos. 59, 62.) The VA
25 filed its motion for summary judgment on February 14, 2025. (Doc. No. 59.) On March
26 28, 2025, Plaintiff Maria Pomares filed a response in opposition to the VA's motion. (Doc.
27 No. 61.) The same day, Plaintiff filed her motion for summary judgment. (Doc. No. 62.)
28 On April 11, 2025, the VA filed a combined response in opposition to Plaintiff's motion

and reply in support of its own motion.  (Doc. No. 63.)  On April 14, 2025, investigative attorney for the VA Office of Inspector General ("VA OIG") Christopher Bader filed a supplemental declaration in connection with the VA's combined response in opposition to Plaintiff's motion and reply.  (Doc. No. 64.)  On April 29, 2025, Plaintiff filed a reply in support of her motion for summary judgment.  (Doc. No. 65.)

On June 2, 2025, the Court held a hearing on the cross-motions for summary judgment. Gary J. Aguirre appeared on behalf of the Plaintiff and Katherine L. Parker appeared on behalf of the VA.  For the reasons that follow, the Court grants the VA's motion for summary judgment in part, denies Plaintiff's motion for summary judgment in part, and orders limited supplemental briefing.

## BACKGROUND

### I.    Factual Background

Between November 2020 and December 2020, Plaintiff submitted three FOIA requests to the VA.  (Doc. No. 6 ¶¶ 37, 82, 101.)  Plaintiff's requests sought records related to alleged misconduct within the VA.

As alleged in the operative First Amended Complaint, Charmain Bogue was the director of the Veterans Benefit Administration's Education Service.  (Doc. No. 6 ¶ 15.) Her husband, Barrett Bogue, was a senior communications advisor to Veterans Education Success ("VES"), a nonprofit advocacy organization that advocated in front of the Veterans Benefit Administration.  (Doc. No. 6 ¶ 11, 31.)   Plaintiff believed that Charmain Bogue had improper connections to VES and that the VA may have leaked nonpublic information to VES that adversely affected the stock price of a private company called Career Education Corporation ("CEC").  (Doc. No. 6 ¶¶ 6-7, 26, 31-33.)  After Plaintiff submitted her FOIA requests, the VA OIG conducted an investigation into Charmain Bogue's alleged misconduct.  (Doc. No. 6 ¶ 34.)

### II.    Procedural Background

In response to Plaintiff's three FOIA requests, the VA released many records and withheld others pursuant to FOIA exemptions.  (See generally Doc. No. 6.)  Plaintiff

3:21-cv-00084-H-MSB

brought the instant action under FOIA to compel the VA to produce additional records. (Doc. No. 1.)  In 2022, the parties filed cross-motions for summary judgment regarding the adequacy of the VA's search, the sufficiency of the Vaughn indices the VA provided, and whether the VA met its burden in withholding and redacting records pursuant to various FOIA exemptions.  (Doc. Nos. 30, 34.)  Following a hearing on the parties' cross-motions, the Court granted summary judgment to the VA on January 6, 2023.  (Doc. No. 46.)

Plaintiff appealed to the Ninth Circuit.  (See Doc. No. 46.)  The Ninth Circuit affirmed as to the adequacy of the VA's search and as to the use of certain FOIA exemptions, but reversed and remanded as to (1) the VA's use of Exemption 6 for personal privacy to redact certain names from released email messages; and (2) the VA's use of Exemption 7(E) for law enforcement techniques and procedures to withhold 2,164 pages of OIG interview transcripts.  Pomares v. Dep't of Veterans Affs., 113 F.4th 870, 877 (9th Cir. 2024).

## II.    The VA's Post-Appeal Document Production

The Ninth Circuit's mandate issued in October 2024.  (Doc. No. 53.)  In light of the decision, the VA released additional documents and a supplemental Vaughn index.  (See Doc. No. 59 at 6-8.)

First, the VA removed Exemption 6 redactions over certain names in email messages and re-released those records to Plaintiff on November 12 and 21, 2024.  (Doc. No. 59 at 6-7; Decl. of Ruthlee Gowins-Bellamy, Doc. No. 59-1 ¶¶ 6-7.)

Second, on November 12 and 14, 2024, the VA released the 2,164 pages of OIG interview transcripts that it had previously withheld pursuant to Exemption 7(E), with certain names and personal information redacted pursuant to Exemptions 6 and 7(C).  (Doc. No. 59 at 6; Gowins-Bellamy Decl., Doc. No. 59-1 ¶¶ 8-10.)  The VA also produced a supplemental Vaughn index describing the redactions.  (Id.; Suppl. Vaughn Index, Doc. No. 59-3.)  On January 17 and 31, 2025, after further review, the VA re-released selected transcript pages with certain redactions removed.  (Gowins-Bellamy Decl., Doc. No. 59-1 ¶ 8.)

On February 13, 2025, the VA produced 14 additional pages of records, which were identified during the VA's post-appeal document review and had not previously been released to Plaintiff.  (Doc. No. 59 at 8; Decl. of Ruthlee Gowins-Bellamy, Doc. No. 59-1 ¶ 15.)  On 2 of those 14 pages, the VA redacted names and personal identifiers pursuant to Exemption 6.  (Id.)  Those redactions are listed in the supplemental Vaughn index that the VA included with its post-appeal production.  (Suppl. Vaughn Index, Doc. No. 59-3 at 96.)

The VA seeks summary judgment that it has released or properly withheld all documents responsive to Plaintiff's December 2020 FOIA request, which is the only remaining request at issue following the Ninth Circuit's ruling.  Plaintiff opposes the VA's motion and cross-moves for summary judgment that the VA failed to meet its burden in withholding and redacting records under the FOIA exemptions and that the Vaughn indices provided are insufficient because they fail to include unreleased documents that are responsive to her December 2020 request.

## DISCUSSION

## I.    Legal Standards

### A.    Summary Judgment

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure when the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A material fact is one that "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc., 618 F.3d 1025, 1031 (9th Cir. 2010).  The party seeking summary judgment bears the burden of establishing the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  In ruling on a motion for summary judgment, the court must view the facts and draw all reasonable inferences in the light most favorable to the non-moving party.  Scott v. Harris, 550 U.S. 372, 378 (2007).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.    FOIA**

"FOIA cases are typically decided on motions for summary judgment." <u>Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.</u>, 85 F. Supp. 3d 1074, 1081 (N.D. Cal. 2015) (citing <u>Yonemoto v. Dep't of Veterans Affs.</u>, 686 F.3d 681, 688 (9th Cir. 2011) as amended (Jan. 18, 2012), *overruled on other grounds by* <u>Animal Legal Def. Fund v. FDA</u>, 836 F.3d 987, 990 (9th Cir. 2016)).

FOIA was enacted "to promote honest and open government" and "to ensure public access to information created by the government . . . ." <u>Wood v. FBI</u>, 432 F.3d 78, 82 (2d Cir. 2005); Freedom of Information Act, 5 U.S.C. § 552 (2016).  An agency bears the burden of demonstrating that it has complied with its obligations under FOIA.  5 U.S.C. § 552(a)(4)(B).  Specifically, an agency bears the burden of demonstrating that it conducted an adequate search and properly withheld documents under one of the recognized exemptions.  <u>Id.</u>; <u>U.S. Dep't of State v. Ray</u>, 502 U.S. 164, 173 (1991).  Because FOIA's purpose reflects a "philosophy of full agency disclosure," the statutory exemptions are construed narrowly, resolving all doubts in favor of disclosure.  <u>See Lion Raisins v. U.S. Dep't of Agric.</u>, 354 F.3d 1072, 1079 (9th Cir. 2004) (citing <u>John Doe Agency v. John Doe Corp.</u>, 493 U.S. 146, 152 (1989)).

An agency may meet its burden by submitting affidavits or declarations that "contain reasonable specificity of detail rather than merely conclusory statements." <u>Jud. Watch, Inc. v. U.S. Secret Serv.</u>, 726 F.3d 208, 215 (D.C. Cir. 2013).  These detailed affidavits should "identify[] the documents withheld, the FOIA exemptions claimed, and [include] a particularized explanation of why each document falls within the claimed exemption.  This submission is commonly referred to as a '*Vaughn*' index." <u>Lion Raisins</u>, 354 F.3d at 1082 (citing <u>Vaughn v. Rosen</u>, 484 F.2d 820, 823-25 (D.C. Cir. 1973)).  A district court assesses the adequacy of an agency's search and justification for withholding documents or portions of documents de novo.  5 U.S.C. § 552(a)(4)(B).

5

## II.    Analysis

### A.    Status of the Issues on Remand

On appeal, the Ninth Circuit affirmed as to the adequacy of the VA's search and as to the use of certain FOIA exemptions, but reversed and remanded as to (1) the VA's use of Exemption 6 for personal privacy to redact certain names from email messages; and (2) the VA's use of Exemption 7(E) for law enforcement techniques and procedures to withhold 2,164 pages of OIG interview transcripts. Pomares, 113 F.4th at 877. The VA seeks summary judgment as to these issues. (Doc. No. 59 at 9.)

With respect to the first issue on remand, in its post-appeal production, the VA released the emails in question without redacting the names that had previously been redacted under Exemption 6. (Doc. No. 59 at 6-7; Gowins-Bellamy Decl., Doc. No. 59-1 ¶¶ 6-7.) Plaintiff concedes that the "VA's re-release of these emails without those redactions obviates the need for further proceedings" on this issue. (Doc. No. 61 at 1; Doc. No. 62-1 at 1.) Accordingly, the VA is entitled to summary judgment on this issue.

With respect to the second issue on remand, following the Ninth Circuit's decision, the VA reconsidered its position on Exemption 7(E) and elected to release the transcripts to Plaintiff, subject to redactions of certain names and personal information pursuant to Exemptions 6 and 7(C). (Doc. No. 59 at 6; Gowins-Bellamy Decl., Doc. No. 59-1 ¶¶ 8-10.) The VA produced a supplemental Vaughn index describing those redactions. (Id.; Suppl. Vaughn Index, Doc. No. 59-3.) Accordingly, the previous issue of whether the transcripts can be withheld in their entirety pursuant to Exemption 7(E) is no longer disputed. Now the parties dispute whether the VA's redactions of information in the transcripts pursuant to Exemptions 6 and 7(C) was proper, which is discussed in detail below.

### B.    The VA Properly Redacted Names and Personal Information from OIG Interview Transcripts Under Exemptions 6 and 7(C)

Following the Ninth Circuit's decision on appeal, the VA released to Plaintiff the 2,164 pages of OIG interview transcripts that it had previously withheld pursuant to

6

Exemption 7(E).  (Doc. No. 59 at 6; Gowins-Bellamy Decl., Doc. No. 59-1 ¶ 8.)  Relying on Exemptions 6 and 7(C), the VA redacted certain names and personal information from those transcripts and included the redactions in a supplemental Vaughn index.  (Doc. No. 59 at 6; Gowins-Bellamy Decl., Doc. No. 59-1 ¶¶ 8-10; Suppl. Vaughn Index, Doc. No. 59-3 at 54-95.)  The VA seeks summary judgment that the redactions were proper.  (Doc. No. 59 at 9.)  Plaintiff argues that the VA has not met its burden in demonstrating the information was properly redacted under Exemptions 6 and 7(C).  (Doc. No. 61 at 21-22; Doc. No. 62-1 at 21-22.)

### 1.     Exemption 6

FOIA Exemption 6 covers "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  "Similar files" include all "government records on an individual which can be identified as applying to that individual."  U.S. Dep't of State v. Washington Post Co., 456 U.S. 595, 602 (1982).  Plaintiff here does not dispute that the names and personally identifying information the VA redacted from the transcripts are "similar files" under Exemption 6.  See Forest Serv. Emps. for Env't Ethics, 524 F.3d at 1024 (concluding that names and identifying information of federal employees is a "similar file" under Exemption 6).

Where redacted information is a "similar file" covered by Exemption 6, courts in the Ninth Circuit employ a two-step burden shifting analysis to determine whether the information was properly withheld.  Rojas v. Fed. Aviation Admin., 941 F.3d 392, 404 (9th Cir. 2019).  "First, the agency must show that there is a nontrivial privacy interest against disclosure."  Pomares, 113 F.4th at 883 (citing Rojas, 941 F.3d at 405).  Although government employees have less of a privacy interest than third parties, they still retain a right to privacy.  See Moore v. Bush, 601 F. Supp. 2d 6, 14 (D.D.C. 2009).  The Ninth Circuit recognizes that lower-level employees have a stronger privacy interest than more senior officials.  Forest Serv. Emps. for Env't Ethics v. U.S. Forest Serv., 524 F.3d 1021, 1025-26 (9th Cir. 2008).  The Ninth Circuit also recognizes that third-party individuals

7

have an even stronger privacy interest.  See Prof. Programs Grp. v. U.S. Dep't of Com., 29 F.3d 1349, 1354 (9th Cir. 1994).

"Second, if the agency makes that showing, the requester must show that the public interest in disclosure outweighs the asserted privacy interest."  Pomares, 113 F.4th at 883 (citing Rojas, 941 F.3d at 405).  "[T]he only relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to."  Rojas, 941 F.3d at 405 (quoting Bibles v. Or. Nat. Desert Ass'n, 519 U.S. 355, 355-56 (1997)).  The requester "must show some nexus between the specific requested information and unveiling agency misconduct[.]"  Lahr v. Nat'l Transp. Safety Bd., 569 F.3d 964, 978 (9th Cir. 2009).

### a.    The VA Has Shown There is a Nontrivial Privacy Interest Against Disclosure

The Court first considers whether the VA has shown there is a nontrivial privacy interest in the redacted information.  The redactions at issue here consist of the names and personal information of VA employees, VES employees, and other individuals not obviously affiliated with either group.  (Doc. No. 59 at 11-12; Suppl. Vaughn Index, Doc. No. 59-3 at 54-95.)  As the VA notes, the Ninth Circuit already recognized a privacy interest under Exemption 6 in similar information, specifically, names and contact information redacted from email messages.  Pomares, 113 F.4th at 883-84.  Although the Vaughn index for the vast majority of those redactions "[did] not state the role or level of the employees whose names were withheld from these records," the Ninth Circuit noted that "the standard for recognizing a nontrivial privacy interest is not demanding."  Id. at 884.  It found that the VA employees had a nontrivial privacy interest in their personal identities, and the VES employees had an even greater privacy interest as "private individuals whose identities are less closely connected to government functioning, which is the public interest recognized by FOIA."  Id.

Turning to the individuals whose personal information was redacted from the

transcripts, the standard for recognizing a nontrivial privacy interest is, as before, not demanding. Further, the individuals in question here include VA employees, VES employees, and unaffiliated individuals even less connected to government functioning than the VES employees. Additionally, the supplemental Vaughn index identifies the role and level of those individuals with more of specificity, making it easier for the Court to weigh the public and privacy interests. (See, e.g., Suppl. Vaughn Index, Doc. No. 59-3 at 54 ("individual identified by interviewee as his Assistant Director of Education (VA)"; id. at 74 ("Name of former VES consultant referenced by interviewee"); id. at 76 ("Name of third-party individual described as having been recommended for presidential appointment to CFPB").) For these reasons, the Court concludes that the VA employees, VES employees, and other unaffiliated individuals have a nontrivial privacy interest in the personal information that was redacted from the OIG interview transcripts.

As the VA notes, Plaintiff does not specifically identify any redactions that she contends are improper. Rather, Plaintiff argues generally that two groups of individuals whose names were redacted do not have a privacy interest in the redacted information. (Doc. No. 62-1 at 21-22.) First, Plaintiff highlights 10 of the 15 witnesses interviewed in VA OIG's investigation, whose names the VA redacted wherever they appear in any other witness's transcript.[1] (Doc. No. 61 at 21.) Second, Plaintiff identifies 3 VES employees – Tanya Ang, Aniela Szymanski, and Michael Saunders – who were witnesses in the investigation, and whose names the VA redacted in some of the places they appear in other witnesses' transcripts. (Doc. No. 61 at 21-22.) Plaintiff argues that none of these individuals have a privacy interest in not being linked to the OIG investigation since their testimony has already publicly linked them to that investigation. (Id.) But the individuals' privacy interest in question here goes beyond merely "not being linked" to the

---

[1] For the other 5 of the 15 witnesses, the VA left their names unredacted throughout the transcripts in deference to the list of names Plaintiff indicated were of interest to her as outlined in the VA's first motion for summary judgment. (Doc. No. 63 at 12 n.6.)

investigation. The VA provides examples of the types of personal information that was discussed in the context of a law enforcement interview outside the individuals' presence or knowledge. (See, e.g., Suppl. Vaughn Index, Doc. No. 59-3 at 76 (discussion in Aniela Szymanski's interview about the personal work history of another VES employee whose name is redacted); id. at 80 (speculation in Michael Saunders's interview that a VES employee whose name is redacted expressed reservations about recommending political appointments to new administration).) The individuals' privacy interest in their personal information that was discussed in other interviews by other witnesses and investigators is not obviated by the fact that those individuals also participated in interviews themselves.

For these reasons, the Court concludes that there is a nontrivial privacy interest in the redacted information at issue here.

### b.   Plaintiff Has Not Shown the Public Interest in Disclosure Outweighs the Asserted Privacy Interest

Because the VA has shown there is a nontrivial privacy interest in the redacted information, the burden shifts to Plaintiff to show that the public interest in disclosure outweighs the asserted privacy interest. "[T]he only relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." Rojas, 941 F.3d at 405 (quoting Bibles, 519 U.S. at 355-56).

With respect to the 10 witnesses interviewed as part of the OIG investigation, Plaintiff notes that "the VA concedes the policy interest weighs in favor of disclosing their names in the transcript of their own testimony" and argues that such "public interest is equally strong in disclosing how their testimony correlates to the testimony of the other [] witnesses about the same investigation." (Doc. No. 62-1 at 20.) But as the VA notes, Plaintiff has not highlighted any specific redacted lines of information from the interview transcripts, much less shown a nexus between that information and unveiling agency misconduct. See Lahr, 569 F.3d at 978. Further, as the Ninth Circuit noted previously, "the public OIG report weakens the public interest in disclosure because the misconduct

has already been publicized." <u>Pomares</u>, 113 F.4th at 885.

Nor does Plaintiff show a public interest in disclosure that outweighs the privacy interest held by the 3 VES employees who were witnesses in the OIG investigation. Plaintiff argues that redacting these individuals' names in other witnesses' testimony "significantly obfuscate[s] how VES used its political clout to pressure Director Bogue to suspend CEC without vetting VES's allegations, since all three were deeply involved in that process." (Doc. No. 65 at 8.) But the VA left these individuals' names unredacted wherever in the transcripts they were discussed as lobbying the VA or Congress, and Plaintiff does not explain how removing redactions over their names in other contexts serves the public interest in disclosure. (Doc. No. 63 at 14; Gowins-Bellamy Decl., Doc. No. 59-1 ¶ 10.)

Plaintiff also notes that Tanya Ang and Aniela Szymanski were present during meetings with VA staff when material nonpublic information was likely discussed. (Doc. No. 62-1 at 22.) But to the extent Plaintiff is suggesting that removing redactions over their names throughout the transcripts could help reveal the source of what Plaintiff believes was leaked nonpublic information, Plaintiff has not shown these individuals have a connection to the leak, and the Ninth Circuit already held that "revealing the names of individuals who have not been shown to have a connection to the suspected leak does not help Pomares determine whether information was leaked or, if so, who might have done it." <u>Pomares</u>, 113 F.4th at 885.

Lastly, Plaintiff highlights the VA's representation that throughout the transcripts, it has declined to redact "[t]he names of VA employees referred to in the transcripts as occupying positions responsible for setting high-level agency policy, such as Deputy Assistant Secretaries or above." (Gowins-Bellamy Decl., Doc. No. 59-1 ¶ 9.) Plaintiff argues that instead, "the names of VA staff in Director Bogue's chain of command" should be unredacted. (Doc. No. 65 at 8.) Plaintiff does not contest that these individuals have a privacy interest in their personal information, but she argues that "[t]he public has an interest in knowing which VA officials condoned Director Bogue's conduct." (Doc. No.

65 at 9.)  She argues further that "the public interest in the disclosure of these facts weighs more heavily in favor of disclosure and less in favor of the privacy interests of any senior VA official who was aware of Director Bogue's misconduct but failed to take act [sic]." (Doc. No. 62-1 at 22.)

As the VA notes, Plaintiff does not identify any specific information from the transcripts or the supplemental Vaughn index that she argues should be un-redacted to serve the public interest she identifies.  She does not list the individuals in Bogue's "chain of command" whose names she argues should be un-redacted, but she states that the "chain of command includes: Bogue's immediate supervisor, the deputy under secretary for benefits, the VBA chief of staff, the under secretary for benefits, the VA chief of staff, the VA deputy secretary and VA secretary."  (Id.)  In her reply brief, Plaintiff also refers the Court to two VA organizational charts.  (Decl. of Gary J. Aguirre 2, Doc. No. 65-1 ¶ 13, Exs. 49-50.)  But the chart that includes Director Bogue does not clearly identify all of the positions Plaintiff lists (see id., Ex. 49), and the other chart does not identify the names of any individuals, and is dated June 2009 (see id., Ex. 50).  Accordingly, the Court cannot determine how Plaintiff's proposed "chain of command" category differs from the category of VA employees whose names the VA already declined to redact, nor can it weigh the public and privacy interests at stake.

For these reasons, the Court concludes that Plaintiff has not shown that any public interest in disclosure outweighs the asserted privacy interests at stake.  As such, the Court concludes that the VA properly redacted names and personal information from the interview transcripts pursuant to Exemption 6.  Accordingly, the VA's motion for summary judgment as to this issue is granted and Plaintiff's motion for summary judgment as to this issue is denied.

## 2.    Exemption 7(C)

FOIA Exemption 7(C) protects from disclosure information compiled for law enforcement purposes where disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  Exemption 7(C) is

similar to Exemption 6 with two key differences: first, Exemption 7(C) is limited to "records or information compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7)(C). Second, Exemption 7(C) is more protective of privacy interests than is Exemption 6 because, to invoke Exemption 7(C), the agency need only show that the production "*could* reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C) (emphasis added); see <u>Dobronski v. F.C.C.</u>, 17 F.3d 275, 279-80 (9th Cir. 1994).

Courts note that the "privacy interest" component in Exemption 6 is nearly interchangeable with that of Exemption 7(C). <u>See</u> <u>FCC v. AT&T Inc.</u>, 562 U.S. 397, 408 (2011). In fact, "Exemption 7(C)'s privacy language is broader than the comparable language in Exemption 6." <u>Reporters Comm. for Freedom of the Press</u>, 489 U.S. at 756. Plaintiff does not distinguish between the VA's application of Exemptions 6 and 7(C). Because the VA's redactions of the OIG interview transcripts were proper under Exemption 6, the redactions were also proper under Exemption 7(C). <u>See</u> <u>Roth v. U.S. Dep't of Just.</u>, 642 F.3d 1161, 1173 (D.C. Cir. 2011) (stating that where Exemption 7(C) is implicated, there is "no need to consider Exemption 6 separately because all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C).").

**C.     The VA Properly Redacted Names and Personal Information Under Exemption 6 from the Records It Produced on February 13, 2025**

The VA seeks summary judgment that it properly produced all non-exempt material from the 14 pages of records located during VA OIG's post-appeal review, which it released to Plaintiff on February 13, 2025. (Doc. No. 59 at 9, 12-13.) On 2 of the 14 pages, the VA redacted names and personal identifiers pursuant to Exemption 6. (Doc. No. 59 at 12-13; Decl. of Ruthlee Gowins-Bellamy, Doc. No. 59-1 ¶ 15.) Those redactions are listed in the supplemental Vaughn index that the VA included with its post-appeal production. (Suppl. Vaughn Index, Doc. No. 59-3 at 96.) The Vaughn index indicates that the redacted names pertain to lower-level VES employees who were copied on an internal VES email.

(Id.)

The VA argues that these employees have nontrivial privacy interests in their personal identities and in not being exposed to the potential harassment that could result from disclosure of their names and contact information, and that there is no countervailing public interest in the disclosure of these individuals' names or identifying information. (Doc. No. 59 at 13.)  As the VA notes, Plaintiff does not dispute these redactions in her moving papers.  Accordingly, the VA's motion for summary judgment as to this issue is granted.

**D.    Limited Supplemental Briefing Is Needed as to Whether All Exhibits Discussed in the OIG Interviews Have Been Released or Properly Withheld**

In her motion for summary judgment, Plaintiff argues based on her review of the previously withheld OIG interview transcripts that the text of those transcripts shows the existence of additional documents responsive to her FOIA requests that have not been released or properly listed in any Vaughn index.  (Doc. No. 62-1 at 4-6, 14-21.)

**1.    Relevant Factual Background**

In light of the Ninth Circuit's decision, the VA determined that it would no longer fully withhold investigation interview transcripts responsive to Plaintiff's December 2020 FOIA request.   (Doc. No. 59 at 6; Gowins-Bellamy Decl., Doc. No. 59-1 ¶¶ 8.) Accordingly, the VA released the interview transcripts with certain names and personal information redacted pursuant to Exemptions 6 and 7(C), as discussed above.  (Doc. No. 59 at 6; Gowins-Bellamy Decl., Doc. No. 59-1 ¶¶ 8-10.)

Plaintiff notes that throughout the transcripts, the VA OIG investigative attorney references "exhibits" used to question the witnesses being interviewed.[2]  (Doc. No. 62-1 at

---

[2]    Subsequent references in this order to "exhibits" are references to the documents or records discussed in the OIG interview transcripts.

14-15.)  The transcripts reference 69 exhibits in this manner.[3]  (Decl. of Christopher Bader 2, Doc. No. 64 ¶ 3.)  Plaintiff notes that the exhibits mentioned in the transcripts range from "Exhibit 3" to "Exhibit 801," which she argues suggests the exhibits mentioned were "select[ed] from a universe of at least 801 exhibits."  (Doc. No. 62-1 at 15.)  Plaintiff argues the VA failed to include these exhibits on any Vaughn index, and as such, the VA is improperly withholding these documents.  (Doc. No. 62-1 at 15-17.)  Plaintiff argues the Court should order the VA to release these documents or list them on a Vaughn index.  (Id. at 17.)

In response, the VA explains that the exhibits discussed in the interview transcripts are one and the same with the records the VA already released to Plaintiff regarding her December 2020 FOIA request.  (Doc. No. 63 at 3-10; see Doc. No. 63-3 (Table of Exhibits cross-referencing the exhibits mentioned in interview transcripts with the Bates numbers ultimately applied to those records).)  By way of further explanation, the VA outlines how it went about responding to that request, which explanation the Court summarizes below.

When the VA first responded to Plaintiff's December 2020 FOIA request, it identified one repository containing responsive records: the VA OIG's SharePoint site containing the records of its investigation into potential misconduct by Director Bogue.  (Doc. No. 63 at 3.)  Whenever an investigative record was uploaded to this SharePoint site, the site automatically assigned that record a document reference number.  (Doc. No. 63 at 3; Decl. of Christopher Bader 1, Doc. No. 63-1 ¶ 5; Decl. of Rashiya Washington, Doc. No. 63-2 ¶ 5.)  The records were then organized into various folders on the SharePoint site.  (Id.)  The total number of records on the SharePoint site was about 820.  (Doc. No. 63 at

---

[3]     In her motion and opposition, Plaintiff states there were 70 exhibits mentioned in the transcripts.  (Doc. Nos. 61, 62.)  In a declaration filed April 14, 2025, VA OIG Investigative Attorney Christopher Bader clarifies that although he previously stated there were 70 exhibits mentioned in the interview transcripts, this was a clerical error and actually only 69 exhibits were mentioned.  (Decl. of Christopher Bader 2, Doc. No. 64 ¶ 3.)  Plaintiff adopts the adjusted figure of 69 exhibits in her reply.  (See Doc. No. 65 at 1, 6.)

3; Washington Decl., Doc. No 63-2 ¶ 5.)

VA OIG Investigative Attorney Christopher Bader explains in a declaration that when he was interviewing witnesses as part of the investigation, he would sometimes show the witness an investigative record from the SharePoint site and verbally identify the record as an exhibit using the last digit or digits of its SharePoint document reference number. (Doc. No. 63 at 3; Bader Decl. 1, Doc. No. 63-1 ¶ 7.  See Doc. No. 61-7 at 38 ("Are you in front of your computer so I can share my screen? . . . So what I'm showing you is Exhibit 73.  It's a series of emails from the ethics specialty team and we are on page 52 of that document."); Doc. No. 61-8 at 57 ("So I'm going to share my screen . . . what I'm showing you right now has been marked as Exhibit 280.  It's a February 28th, 2019 email . . . .).) He states further that because the exhibits used during the interviews were identified using the SharePoint assigned document reference number, and not numbered separately for each interview, the numbering for those exhibits was not consecutive.  (Bader Decl. 1, Doc. No. 63-1 ¶¶ 7-8.)   As stated above, the transcripts reference 69 exhibits in this manner. (Washington Decl., Doc. No. 63-2 ¶ 8; Bader Decl. 2, Doc. No. 64 ¶ 3.)  But these exhibits were not saved with nor attached to the transcripts for the interviews in which they were referenced; rather, they remained saved in their original locations on the SharePoint site after the investigator and the witness were finished discussing them.  (Doc. No. 63 at 4; Gowins-Bellamy Decl., Doc. No. 59-1 ¶ 13.)

When the VA OIG concluded its investigation in the spring of 2022, the VA OIG Office of Information Release uploaded the investigative records from the SharePoint site to a program called FOIAxpress for processing, review, and potential release.  (Doc. No. 63 at 4; Gowins-Bellamy Decl., Doc. No. 59-1 ¶ 14.)  The records – including those that had been referred to as exhibits in the interview transcripts – were then either (1) reviewed and released by VA OIG itself, subject to the withholdings and redactions described in VA OIG's July 2022 Vaughn index; or (2) were referred to other VA components where they originated so that those components could process them for potential FOIA release, also as described on VA OIG's July 2022 Vaughn index.  (Gowins-Bellamy Decl., Doc. No. 59-1

¶ 14.)  Specifically, out of the approximately 800 total records that were uploaded to FOIAxpress, VA OIG released more than 2000 pages of records directly to Plaintiff, referred 488 pages of records to the VA Office of General Counsel ("OGC"), and referred 1302 pages of records to the Veterans Benefits Administration ("VBA").  (Doc. No. 30-2 at NOL 011-012 (Gowins-Bellamy declaration describing the records that it released, withheld, and referred), NOL 357-399 (corresponding Vaughn index); Doc. No. 63 at 5; Gowins-Bellamy Decl., Doc. No. 59-1 ¶ 14.)  OGC and VBA both submitted declarations and Vaughn indices with the VA's first motion for summary judgment addressing how they processed the pages of records they received from VA OIG under FOIA.  (See Doc. No. 30-4 at NOL 410-412 (OGC declaration discussing receipt, processing, and release of 488 pages of records referred from VA OIG), NOL 513-574 (corresponding OGC Vaughn index); Doc. No. 30-13 at NOL 1325-1328 (VBA declaration discussing receipt, processing, and release of 1302 pages of records referred from VA OIG), NOL 1541-1631 (corresponding VBA Vaughn index).)

After Plaintiff ultimately received and reviewed the OIG interview transcripts, on November 18, 2024, she raised the issue of the exhibits referenced in those transcripts with the VA.  (Doc. No. 62-1 at 4; Decl. of Gary J. Aguirre 1, Doc. No. 62-2 ¶ 39; Doc. No. 63 at 6-7.)  In response, the VA began reviewing the records on the SharePoint site to confirm that all the records had been collected.  (Doc. No. 63 at 6.)  During this review, the VA identified 14 pages of responsive records that had not been previously released to Plaintiff.  (Doc. No. 59 at 8; Decl. of Ruthlee Gowins-Bellamy, Doc. No. 59-1 ¶ 15.)  The VA produced those records, subject to redactions included in the supplemental Vaughn index, in February 2025.  (Id.; see Suppl. Vaughn Index, Doc. No. 59-3 at 96.)  The VA confirms that following the release of those remaining 14 pages of records, "[t]here are thus no investigation 'exhibits' remaining in VA OIG's SharePoint investigation file that the VA is withholding from Plaintiff[.]"  (Doc. No. 63 at 6.)

As a courtesy to Plaintiff and the Court, the VA helpfully created and provided a table with its combined response in opposition to Plaintiff's motion and reply, listing the

69 exhibits referenced in the transcripts by their titles and SharePoint document reference numbers. (Doc. No. 63 at 9; Washington Decl. ¶ 10; see Table of Exhibits, Doc. No. 63-3.) For each of the exhibits that was among the more than 2000 pages of records the VA OIG released directly to Plaintiff, the table cross-references the record with the Bates numbers the VA OIG applied to it. (Id.) But for the remaining exhibits that were among the 488 pages of records referred to OGC or the 1302 pages of records referred to VBA, VA OIG cannot determine what Bates numbers OGC or VBA ultimately applied to them before releasing them to Plaintiff. (Doc. No. 63 at 9; Washington Decl. ¶ 10.) This is because when SharePoint records are uploaded to FOIAxpress, their SharePoint document reference numbers are not retained by the FOIAxpress program. (Doc. No. 63 at 4; Gowins-Bellamy Decl., Doc. No. 59-1 ¶ 14.)

### 2. Analysis

In light of the facts summarized above, Plaintiff argues that because the records in question were referenced as exhibits in the interviews, they should be treated as incorporated in the transcripts, and the VA should have either released them or provided a Vaughn index documenting them. The VA contends that the references to exhibits in the transcripts are simply references to documents that have already been released or documented in a Vaughn index. Accordingly, the VA argues, there are no remaining documents to release. Plaintiff contends that the VA should be required to verify this by linking each exhibit with either the line item where it is already listed in a Vaughn index or with the Bates number that was ultimately applied to it when it was released. Plaintiff suggests that alternatively, the VA should release the exhibits in their original form on the SharePoint site.

In order to analyze the parties' positions, the Court first considers the exhibits that VA OIG released directly to Plaintiff, and then considers the exhibits it referred to OGC and VBA.

**a.** **No Further Briefing Is Needed as to the 40 Exhibits that VA OIG Released Directly to Plaintiff**

The Court first considers the 40 out of 69 exhibits discussed in the transcripts that VA OIG released directly to Plaintiff. For these 40 records, the VA's Table of Exhibits cross-references each record with the Bates numbers the VA OIG applied to it. (Doc. No. 63 at 9; Washington Decl. ¶ 10; see Table of Exhibits, Doc. No. 63-3.) Plaintiff notes that the table does not link any of those exhibits to a line item in a Vaughn index. (Doc. No. 65 at 6.) But because the Bates numbers are provided, the exhibits can be located in one of the VA's Vaughn indices with little effort. (See Table of Exhibits, Doc. No. 63-3; Doc. No. 30-2 at NOL 357-399 (2022 Gowins-Bellamy Vaughn index that lists 38 out of 69 exhibits that VA OIG released directly to Plaintiff); Suppl. Vaughn Index, Doc. No. 59-3 at 96 (Vaughn index that lists the remaining 2 exhibits VA OIG released directly to Plaintiff).)

The Court has reviewed the document names of the 40 exhibits in the Table of Exhibits that VA OIG released directly to Plaintiff and finds that 38 of them align with a corresponding description in the 2022 Gowins-Bellamy Vaughn index. (See, e.g. Table of Exhibits, Doc. No. 63-3 at 1 (document name of Bates numbers 6874-6875 includes "C. Bogue email re Follow up- Clarification OIG Interview Questions.pdf"); Doc. No. 30-2 at NOL 377 (description of Bates numbers 6874-6875 is "Email from Charmain Bogue to OIG investigator dated April 16, 2021"); see also Table of Exhibits, Doc. No. 63-3 at 3 (document name of Bates numbers 7005-7013 includes "VES Letter to VA re Ashford.pdf"); Doc. No. 30-2 at NOL 383-384 ("description of Bates numbers 7005-7013 is "VES letter").)

The document names for the remaining 2 of the 40 exhibits – those identified as Exhibits 607 and 756 – align with a corresponding description in the supplemental Vaughn index the VA filed with its motion for summary judgment. (See Table of Exhibits, Doc. No. 63-3 at 3 (document name of Bates numbers 7230-7241 includes "Szymanski Letter to Dworakowski re US K9 Unlimited.pdf"); Suppl. Vaughn Index, Doc. No. 59-3 at 96

(describes Bates numbers 7230-7241 as a letter concerning allegations of misconduct against a school for dog trainers, addressed to individuals including VA Education Services Assistant Director Patrick Dworakowski); Table of Exhibits, Doc. No. 63-3 at 4 (document name of Bates numbers 7228-7229 includes "Wofford to Bogue Re Colmery Webinar, December 18, 2018.pdf"); Suppl. Vaughn Index, Doc. No. 59-3 at 96 (describes Bates numbers 7228-7229 as an email with subject "Colmery Webinar, December 18, 2028 @ 1:00 pm (EST) w/ Link").)

Accordingly, the Court finds that the Table of Exhibits sufficiently links the 40 records that VA OIG released directly to Plaintiff to either the 2022 Gowins-Bellamy Vaughn index or the supplemental Vaughn index such that it is clear they have already been released or properly withheld.

> **b.**    **Limited Supplemental Briefing Is Needed as to Whether 29 Exhibits Have Been Released or Properly Withheld**

The remaining 29 out of 69 exhibits were among the records referred to and reviewed by OGC and VBA. The VA includes these records in its Table of Exhibits, but as previously noted, the table does not include Bates numbers for the records. The VA explains that this is because VA OIG cannot determine what Bates numbers OGC or VBA ultimately applied to the records before releasing them to Plaintiff. (Doc. No. 63 at 9; Washington Decl. ¶ 10.)

Nor does the table link the records with specific line items in any Vaughn index. Rather, for each record, the table cites to the entirety of the OGC Vaughn index, and in one case, to the entirety of both the OGC Vaughn index and the VBA Vaughn index. (Table of Exhibits, Doc. No. 63-3 at 4-6 (citing to OGC Vaughn index at Doc. No. 30-4 at NOL 513-574 and VBA Vaughn index at Doc. No. 30-13 at NOL 1541-1631).) But without Bates numbers, these records cannot be linked with corresponding entries in those lengthy Vaughn indices easily or with certainty. Complicating the situation is the fact that OGC did not maintain the documents it received from VA OIG in the same format in which VA OIG stored them on the SharePoint site. The VA explains in more detail, using the example

of Exhibit 73: "while VA OIG maintained this exhibit on SharePoint as a single document of at least 52 pages, containing multiple email strings from different dates, OGC's Vaughn index described partially released or withheld emails on a page-by-page basis. There is thus no direct one-to-one correspondence between the 'Exhibit 73' and the description of the records as ultimately released to Plaintiff by OGC." (Doc. No. 63 at 9 n.5 (citations omitted).)

The VA argued at the hearing that these documents have already been released to Plaintiff or included in a Vaughn index, and it has no obligation under FOIA to further link the documents with respective locations on a Vaughn index because they were discussed as "exhibits" in the interview transcripts. It further notes that "[i]n July 2022, both OGC and VBA submitted declarations and Vaughn indexes meticulously describing the documents they had received from VA OIG, which documents they released from those records, and the rationale for any redactions or withholdings." (Doc. No. 63 at 9.) But the VA bears the burden of demonstrating that it properly withheld documents under one of the recognized exemptions, which it may do by submitting affidavits or declarations that "contain reasonable specificity of detail rather than merely conclusory statements." Ray, 502 U.S. at 173; Jud. Watch, Inc., 726 F.3d at 215. Here, Plaintiff has identified interview transcripts discussing records that appear responsive to her December 2020 FOIA request. Though as explained above, the VA has located some of these documents in its Vaughn indices, there remain 29 records that the VA has not specifically located on any Vaughn index.[4] These are Exhibits 73, 85, 279, 280, 282, 284, 285, 286, 327, 328, 374, 413, 418,

---

[4]     Plaintiff argues elsewhere that the VA should be required to "release all 801 exhibits or provide a Vaughn index for any it withheld." (Doc. No. 62-1 at 4, 14-17.) Plaintiff's position that the VA is withholding 801 exhibits is based on her observation that the exhibits mentioned in the transcripts range from "Exhibit 3" to "Exhibit 801." (Doc. No. 62-1 at 15.) But the VA explained that the numbering for the exhibits was not consecutive because they were identified using the SharePoint assigned document reference number (Bader Decl. 1, Doc. No. 63-1 ¶¶ 7-8), and Plaintiff provides no other

420, 427, 435, 449, 450, 472, 473, 474, 477, 485, 486, 490, 494, 734, 736, and 740. It may be true that these records are ones that have already been released to Plaintiff or otherwise included on a Vaughn index, but the VA must clearly demonstrate this. Alternatively, the VA may release these 29 exhibits to Plaintiff in the format in which they existed before the VA referred them to the other VA components, along with a Vaughn index for any redactions or withholdings.

The Court orders supplemental briefing to resolve this specific issue. The parties' obligations for this supplemental briefing are outlined in the final section of this order.

### E.    Arguments Raised in Plaintiff's Reply

Plaintiff raises two new arguments in her reply. First, she states she conducted a deeper review of the VES records already released and argues that this review shows that the VA failed to release or properly identify on a Vaughn index thousands of additional pages of VES records. (Doc. No. 65 at 4-6.) Specifically, Plaintiff identified several records suggesting VES produced more records in response to the subpoena than were previously known to Plaintiff. (See Doc. No. 65-12 (email from VES's counsel stating that VES had produced more than 132,000 pages of records in response to April 28, 2021 subpoena); Doc. No. 65-14 (letter from VES's counsel stating that VES had produced more than 33,000 records comprising almost 132,000 pages of documents in response to the subpoena).) Plaintiff states that except for 755 pages described in the 2022 Gowins-Bellamy Vaughn index, the VA has not released or identified these records on any Vaughn index. (Doc. No. 65 at 5.)

Second, Plaintiff argues the VA is improperly withholding the content of certain records under Exemption 5, because the VA's release of transcripts disclosing the content of the records waived that exemption. (Doc. No. 65 at 7.) Plaintiff highlights that VA OIG Investigative Attorney Bader questioned witnesses about Exhibits 73, 485, 486, and 60

---

reason to believe the VA is withholding documents that were not discussed during the OIG interviews.

over multiple transcript pages, and states that both questions and answers in the transcripts disclose the content of these records in quotes, descriptions, and summaries. (Doc. No. 65 at 7.) In support, Plaintiff cites <u>Watkins v. United States Bureau of Customs</u>, 643 F.3d 1189 (9th Cir. 2011) for the proposition that "when an agency freely discloses to a third party confidential information covered by a FOIA exemption without limiting the third-party's ability to further disseminate the information then the agency waives the ability to claim an exemption to a FOIA request for the disclosed information." (<u>Id.</u>)

Plaintiff raises these arguments for the first time in her reply brief.[5] As such, the Court declines to consider them. <u>See</u> <u>Greisen v. Hanken</u>, 925 F.3d 1097, 1115 (9th Cir. 2019) ("[A] district court need not consider arguments raised for the first time in a reply brief." (quoting <u>Zamani v. Carnes</u>, 491 F.3d 990, 997 (9th Cir. 2007)); <u>Novosteel SA v. U.S., Bethlehem Steel Corp.</u>, 284 F.3d 1261, 1274 (Fed. Cir. 2002) ("[R]eply briefs . . . do not provide the moving party with a new opportunity to present yet another issue for the court's consideration."); <u>United States v. Boyce</u>, 148 F. Supp. 2d 1069, 1085 (S.D. Cal. 2001) ("[I]t is improper for a party to raise a new argument in a reply brief.").

## F.    Plaintiff's Request for Discovery

In her reply, Plaintiff requests the Court order the VA to make available for deposition two VA officials to be selected by Plaintiff. (Doc. No. 65 at 10.) But as the Ninth Circuit has noted, "in [FOIA] cases courts may allow the government to move for summary judgment before the plaintiff conducts discovery." <u>Lane v. Dep't of Interior</u>, 523 F.3d 1128, 1134 (9th Cir. 2008). As explained above, the Court orders supplemental briefing regarding the specific disputed issue that remains here. <u>See</u> <u>Edelman v. SEC</u>, 2017 WL 4286939, at *8 (S.D. Cal. Sept. 27, 2017) (quoting <u>Jarvik v. CIA</u>, 741 F. Supp. 2d 106,

---

[5]     Plaintiff cursorily suggests in her motion for summary judgment and opposition brief that Exemption 5 has been waived for Exhibit 73 (<u>see</u> Doc. No. 61 at 20; Doc. No. 62-1 at 20), but makes the suggestion in passing within a section arguing that the VA improperly failed to release or otherwise identify in a Vaughn index all of the exhibits that were discussed during the OIG interviews.

122 (D.D.C. 2010) ("Even if an agency's affidavits regarding its search are deficient, courts generally do not grant discovery but instead direct the agency to supplement its affidavits.")). Accordingly, the Court concludes that discovery is not necessary at this time.

## CONCLUSION AND ORDER

For the foregoing reasons, the Court grants the VA's motion for summary judgment and in part denies Plaintiff's motion for summary judgment in part.

The dispute that remains concerns the 29 documents discussed as exhibits in the OIG interview transcripts that have not been sufficiently linked to any Vaughn index: Exhibits 73, 85, 279, 280, 282, 284, 285, 286, 327, 328, 374, 413, 418, 420, 427, 435, 449, 450, 472, 473, 474, 477, 485, 486, 490, 494, 734, 736, and 740. The Court issues the following schedule for supplemental briefing on this remaining dispute only:

1.    The VA must file supplemental briefing on or before **June 16, 2025** in support of its position that the 29 documents in question have been released or properly identified in a Vaughn index. The supplemental briefing must not exceed 10 pages, not including exhibits necessary to support the briefing.

2.    Plaintiff must file a response to the VA's supplemental briefing on or before **June 30, 2025**. Plaintiff's response must not exceed 10 pages, not including exhibits necessary to support the response.

3.    There will be no reply briefs filed absent further order of the Court.

**IT IS SO ORDERED.**

DATED:  June 2, 2025

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT